UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

James Brink,

      Plaintiff,

v.

Nancy A. Berryhill,
Acting Commissioner of Social Security,

      Defendant.

Case No. 17-cv-812 (SER)

**ORDER**

STEVEN E. RAU, United States Magistrate Judge

Pursuant to 42 U.S.C. § 405(g), Plaintiff James Brink ("Brink") seeks review of the Acting Commissioner of Social Security's (the "Commissioner") denial of his application for disability insurance benefits ("DIB"). *See* (Compl.) [Doc. No. 2]; (Admin. R.) [Doc. No. 11 at 98]. The parties filed cross-motions for summary judgment. (Pl.'s Mot. for Summ. J.) [Doc. No. 14]; (Def.'s Mot. for Summ. J.) [Doc. No. 16]. For the reasons set forth below, the Court denies Brink's Motion for Summary Judgment and grants the Commissioner's Motion for Summary Judgment.

**I.    BACKGROUND**

    **A.    Procedural History**

Brink filed for DIB on May 6, 2013, citing an alleged onset date ("AOD") of April 1, 2013. (Admin. R. at 155). Brink's application identified disabilities due to a spine disorder, spinal fusion, disc problems, laminectomy, pinched nerve in neck, numbness in arm and leg, and several bulging discs. (*Id.*). Brink's claims were denied initially and upon reconsideration. (*Id.* at

165, 167). Following a hearing, the administrative law judge (the "ALJ") denied benefits to Brink on November 23, 2015. (*Id.* at 98–108). The Appeals Council denied Brink's request for review, rendering the ALJ's decision final. (*Id.* at 1); *see* 20 C.F.R. § 404.981. Brink initiated the instant lawsuit on March 17, 2017. (Compl.).

### B. Factual Background

The Court reviewed the entire Administrative Record, but summarizes only the evidence necessary to determine the issues before the Court.

#### 1. Brink's Background and Testimony

On his AOD, Brink was forty-nine years old, making him a younger individual, though he has since become a person approaching advanced age. 20 C.F.R. § 404.1563(c), (d); *see* (Admin. R. at 263).

Brink completed high school and has a two-year degree in machine tool technology. (Admin. R. at 117–18). He has work experience as a machinist, auto repair mechanic, press brake operator, car wash owner, and delivery driver. (*Id.* at 119–21).

He stopped working in 2013 due to pain and numbness in his right leg. (*Id.* at 135). Although his neck and right shoulder started "acting up" in 2011 or 2012, by 2013, his neck was immobilized four to five times per year. *See* (*id.*). He had surgery on his low back in April 2013 and returned to work doing "light duty," such as answering the phone and talking to customers. (*Id.* at 136). He was able to lie down on a couch and vary his hours as needed. (*Id.*). Ultimately, work was "extremely painful" and he quit. (*Id.*). Although surgery helped his lower back moderately, it did not alleviate the pain in his right leg. (*Id.* at 137).

He had his second surgery in September 2014. (*Id.*). He experienced some relief in his right leg pain, but it did not resolve completely. (*Id.* at 138). Since his second surgery, Brink has

attempted to relieve pain by attending a pain clinic and taking oxycodone and Flexeril.[1] (*Id.* at 138). At the time of the hearing before the ALJ, his "baseline pain" in his lower back and right leg were a four to five out of ten. (*Id.*). Triggers for his pain include sitting for more than an hour, standing for more than an hour, and walking more than 200 yards. (*Id.* at 138–39).

Brink had fusion surgery on his neck in 1999, and another surgery in September 2015 to revise it. (*Id.* at 139). His symptoms include a sore neck, numbness on the right side of his face, and down his right arm. (*Id.*). He testified that the recent surgery appears to be helping, although he is having more trouble with his fingers. (*Id.* at 139–40).

Brink testified that pain wakes him up and that he considers four hours of sleep a good night. (*Id.* at 141). To compensate, he has to lay down every hour or two, for a total of about six hours per day. (*Id.* at 141–42).

Brink testified that the most he can lift off the floor is a spoon, and that he can probably pick up, lift, and carry twenty pounds, as long as he does not need to lift it from the floor. *See* (*id.* at 142–43). He cannot, however, lift and carry twenty pounds a few times per hour without lying down in between. (*Id.* at 143). At home, he does "a fair amount of the cooking," some laundry, light housework, and some grocery shopping. (*Id.*). Even when he is cooking, he will sometimes lie down for five minutes. (*Id.* at 143–44). Pain prevents him from engaging in recreational activities. (*Id.* at 144).

Brink testified that he would not be able to stand and walk six hours a day, five days a week because of his lower back pain and headache. (*Id.* at 144–45). He gets three to four severe headaches a week that cause him to throw up. (*Id.* at 145).

---

[1]   Flexiril is the brand name of cyclobenzaprine, a muscle relaxant. *Cyclobenzaprine (Oral Route)*, Mayo Clinic, https://www.mayoclinic.org/drugs-supplements/cyclobenzaprine-oral-route/description/drg-20063236 (last updated Mar. 1, 2017).

**2.     Medical Evidence**

Around 2001, Brink had his first cervical spine surgery, apparently to correct problems related to a bone spur. (*Id.* at 384).[2]

In February 2012, Brink saw Russell Gelfman, MD ("Dr. Gelfman"), for numbness in the right side of his neck and shoulder. (*Id.* at 381). Dr. Gelfman ordered an MRI which revealed neural foraminal stenosis in Brink's cervical spine, as well as a disk bulge.[3] (*Id.* at 380, 382). Dr. Gelfman treated Brink with mechanical cervical traction, which worked well for a period of time. (*Id.* at 371, 378). In December 2012, however, Brink returned to Dr. Gelfman, complaining that his neck pain had returned after he stopped using the cervical traction unit. (*Id.* at 371). Additionally, Brink told Dr. Gelfman that he had started suffering lower back pain, radiating down to his groin, after kicking a football two months earlier. (*Id.*). In April 2013, after reviewing a lumbar MRI, Dr. Gelfman diagnosed Brink with right L3 radiculopathy, L4-5 neural foraminal narrowing, and T12-L1 disk extrusion.[4] (*Id.* at 370).

On April 18, 2013, William E. Krauss, MD ("Dr. Krauss"), operated on Brink's lower back to correct nerve pinching. (*Id.* at 365–66). But at a July 2013 appointment with Dr. Gelfman, Brink reported that neither the surgery nor subsequent epidural steroidal injections improved his back and leg pain. (*Id.* at 404). Dr. Gelfman ordered MRIs of Brink's right hip and pelvis, which revealed a tear in his right labrum and trochanteric bursitis. (*Id.* at 400, 402). Brink

---

[2]     There are no medical records describing this surgery in the current Administrative Record. This particular record is dated May 1, 2013, and refers to surgery "12 years ago." It appears this may be the same surgery that Brink testified took place in 1999. *See* (Admin. R. at 139, 384).

[3]     Spinal stenosis is when the nerves in the spine are squeezed or pinched, often causing pain or numbness. *Spinal stenosis*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/spinal-stenosis/symptoms-causes/syc-20352961 (last visited Feb. 12, 2018).

[4]     Radiculopathy is a disorder of the spinal nerve roots. *Radiculopathy* 748650, Stedman's Medical Dictionary, Westlaw (database updated Nov. 2014)

reported difficulty working and Dr. Gelfman noted that he was "unable to continue in a highly physical occupation such as a mechanic." (*Id.* at 400).

In May 2014, after cervical and lumbar spine x-rays and a lumbar spine MRI, Cory Duffek, MD ("Dr. Duffek"), diagnosed Brink with cervical spine stenosis and a disc protrusion in his L3-L4 vertebrae. (*Id.* at 431–34). Brink was referred to surgeon Jeffrey S. Henn, MD ("Dr. Henn), who scheduled a decompression and fusion procedure on Brink's L3 and L4 vertebrae to correct his lumbar spine problems for September 15, 2014. (*Id.* at 437–38).

In June 2014, between Brink's initial consultation with Dr. Henn and the surgery itself, Joe McGilvrey ("McGilvrey"), a physical therapist, filled out a functional capacity evaluation report. (*Id.* at 446). McGilvrey opined that Brink could perform light work, but that he was unable to squat, kneel, stoop, bend forward, or lift weight from the floor. (*Id.* at 446–47).

Brink had surgery as scheduled on September 15, 2014. (*Id.* at 467). At a December 2014 follow-up appointment, he reported that he still had some pain in his lower back that went down his right leg. (*Id.* at 518). At a January 2015 appointment with Velimir A. Micovic, MD ("Dr. Micovic"), Brink reported that his back and leg pain were better since the surgery. (*Id.* at 485). At this same appointment, Dr. Micovic reviewed a November 2014 MRI and noted that the pinched nerve in Brink's lower back was mild and had "not appreciably changed." (*Id.* at 486–87).

During the January 2015 appointment, Dr. Micovic also filled out a form entitled "Disorders of the Spine Treating Physician Data Sheet" (the "Data Sheet"). (*Id.* at 492–507). Dr. Micovic stated that Brink had trouble walking on uneven surfaces, was unable to stand or walk for six to eight hours a day on a long-term basis, had significant limitation on lifting and

5

carrying, and needed to change body positions every thirty minutes. (*Id.* at 497, 499, 501). He also noted that Brink had a positive straight leg raise test at sixty degrees.[5] (*Id.* at 495).

Brink followed up with a nurse practitioner, Janine M. Hass ("Hass"), with similar symptoms to his previous appointments: neck pain and lower-and mid-back pain. (*Id.* at 505, 509). In May 2015, Hass referred Brink back to Dr. Henn. (*Id.* at 508). On July 23, 2015, Dr. Henn noted that Brink was "very uncomfortable and is getting worse." (*Id.* at 523). Dr. Henn performed surgery on Brink's cervical spine on September 16, 2015. (*Id.* at 530). In an October follow up appointment, Brink reported no neck or arm pain.[6] (*Id.* at 527).

### C.     The ALJ's Decision

Consistent with the Social Security Administration's regulations, the ALJ conducted the five-step eligibility analysis. (Admin. R. at 98–108); *see* 20 C.F.R. § 404.1520(a)(4). The ALJ found that Brink had the following severe impairments:

> Status post L3-4 laminectomy and foraminotomy, disc extrusion at T12-L1, status post fusion at C5-6, stenosis at C3-4, lumbar radiculopathy, stenosis at L4-5, labral tear of the right hip, cervical degenerative disc disease, status post decompression surgery at L3-4 and L4-5, fusion at L3-4, multilevel degenerative joint disease in the cervical spine, and mild encroachment of several lumbar nerve roots.

(*Id.* at 100) (citation omitted). The ALJ reviewed Listing 1.00 (musculoskeletal system), and found Brink did not meet the Listing. (*Id.* at 101). The ALJ found Brink had the residual functional capacity ("RFC") to perform sedentary work with the following additional limitations:

> [Brink] is able to lift, carry, push and pull 20 pounds occasionally, frequently lift, carry, push and pull less than 10 pounds. [Brink] can sit for six hours in an 8-hour workday; stand and walk in combination for two hours in an 8-hour workday.

---

[5]   This result indicates nerve compression or impingement. *See Straight-leg raising test* 908450, Stedman's Medical Dictionary, Westlaw (database updated Nov. 2014).

[6]   The Administrative Record also includes medical evidence from 2016 that was submitted to the Appeals Council. *See* (Admin. R at 6–92). Because the parties' arguments do not relate to these records, they are not summarized here.

> [Brink] can occasionally stoop, crouch, kneel, and balance, but should not crawl. . . . [Brink] can occasionally climb stairs and ramps. He should not climb ladder[s], ropes, or scaffolds. [Brink] can occasionally reach bilaterally in all directions including overhead; however, he is not to exceed 10 pounds in weight lifted. [Brink] can frequently finger, feel, and handle. He needs to avoid concentrated exposure to vibrations. . . . He needs to avoid concentrated exposure to extreme heat and cold. . . . He needs to avoid working with or near dangerous and moving type[s] of equipment or machinery. Due to pain effecting concentration and focus, he will need scheduled work breaks of 15 minutes in the first half of the workday, a 15 minutes [sic] in the second half of the workday, and a 30-minute midday break.

(*Id.* at 101). The ALJ found that although Brink was unable to perform his past relevant work, there were jobs that exist in significant numbers in the national economy that he could perform. (*Id.* at 106–07). Therefore, the ALJ concluded that Brink was not disabled. (*Id.* at 108).

## II.   DISCUSSION

### A.   Legal Standard

If "substantial evidence" supports the findings of the Commissioner, then these findings are conclusive. 42 U.S.C. § 405(g). The Court's review of the Commissioner's final decision is deferential because the decision is reviewed "only to ensure that it is supported by substantial evidence in the record as a whole." *Hensley v. Barnhart*, 352 F.3d 353, 355 (8th Cir. 2003) (internal quotation marks omitted). The Court's task is limited "to review[ing] the record for legal error and to ensur[ing] that the factual findings are supported by substantial evidence." *Id.* This Court must "consider evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Burnside v. Apfel*, 223 F.3d 840, 843 (8th Cir. 2000).

A court cannot reweigh the evidence or "reverse the Commissioner's decision merely because substantial evidence would have supported an opposite conclusion or merely because [a court] would have decided the case differently." *Harwood v. Apfel*, 186 F.3d 1039, 1042 (8th Cir. 1999).

**B.     Analysis**

Brink argues the ALJ erred in three ways. First, Brink argues the ALJ erred in assigning little weight to the restrictions Dr. Micovic provided. (Pl.'s Mem. in Supp. of Mot. for Summ J., "Brink's Mem. in Supp.") [Doc. No. 15 at 9]. Second, Brink argues the ALJ erred because he did not provide sufficient reasons for finding Brink's complaints of pain "not entirely credible." (*Id.* at 13). Finally, Brink argues substantial evidence does not support the RFC, which allegedly does not include all of Brink's limitations. *See* (*id.* at 15). The Court discusses each of Brink's arguments in turn.

**1.     Dr. Micovic**

Dr. Micovic's Data Sheet—dated January 26, 2015—provides several restrictions. They include: Brink must be able to change his position every thirty minutes; he may walk one block on rough surfaces but it is not recommended; he can climb a few steps but it is not recommended; Brink can stand or walk for two hours in a six- to eight-hour work day, can occasionally carry twenty pounds, can frequently carry less than ten pounds, can never stoop; and can occasionally tolerate vibration. (Admin. R. at 497, 499, 501–02). The ALJ gave little weight to Dr. Micovic's restrictions that were greater than the restrictions provided in the RFC because they were "not consistent with the medical evidence of record as a whole" and were "not supported by subsequent treatment notes." (*Id.* at 105). The restrictions the ALJ declined to adopt were the restrictions that Brink must not bend or stoop, that Brink must change positions every thirty minutes, and that Brink cannot climb a few steps. *See* (*id.*).

Brink argues that the ALJ's decision to give some of Dr. Micovic's restrictions little weight was erroneous for three reasons: (1) the ALJ only referred to evidence after October 8, 2015, to support his decision; (2) the evidence the ALJ cited "is not representative of the record

as a whole"; and (3) the ALJ failed to consider the factors the regulations require him to consider. (Brink's Mem. in Supp. at 9–11).

The Court construes Brink's first two arguments to be an effort to ask the Court to reweigh the evidence. Brink argues that the ALJ relied only on evidence from October 8, 2015, or later, but does not point the Court to evidence from before October 8, 2015, that would support the restrictions the ALJ rejected. *See* (Brink's Mem. in Supp. at 9). Brink argues the ALJ disregarded evidence that is favorable to Brink, and cites examples. (*Id.* at 10). But the ALJ summarized Brink's medical history in the pages preceding his discussion of Dr. Micovic's Data Sheet. *See* (Admin. R. at 102–05). Parts of this summary refer to the exact same findings that Brink argues the ALJ ignored. For example, Brink points to his May 2014 MRI of his lumbar spine, which he says shows "significant disc problems affecting his nerve roots." (Brink's Mem. in Supp. at 10) (citing Admin. R. at 433–34). The ALJ described these results in his decision.[7] (Admin. R. at 103). Brink points to his September 2014 surgery, continued symptoms, and his third surgery in September 2015. (Brink's Mem. in Supp. at 10) (citing Admin. R. at 467, 523, 530–33, 552). The ALJ also reviewed these events. (Admin. R. at 103–04).

Additionally, the ALJ noted that by October 2015, Brink had improved significantly. (Admin. R. at 105). Brink argues that this must mean he is entitled to a closed period of disability ending in October 2015. (Brink's Mem. in Supp. at 10); *see Harris v. Sec'y of Dep't of Health & Human Servs.*, 959 F.2d 723, 724 (8th Cir. 1992) (stating that Social Security benefits may be awarded "either on a continuing basis or for a 'closed period.'" (citing 20 C.F.R. § 404.316)). But the Court does not construe the ALJ's opinion—or the medical evidence—to

---

[7] There are two medical records of this MRI that are identical; one that begins on page 433, to which Brink refers, and one on pages 465–66, to which the ALJ refers. *See* (Admin. R. at 103) (referring to Exhibit 8F/3, which corresponds to page 466 of the Administrative Record).

9

conclude that Brink was disabled until October 2015. Instead, the ALJ concluded that some of Dr. Micovic's restrictions given in January 2015 were no longer necessary in November 2015, the time of the ALJ's decision, based on Brink's more recent medical records. *See* (Admin. R. at 105). Brink does not argue that the ALJ erroneously interpreted the more recent medical records, and the Court sees no error in the ALJ's analysis of the more recent medical records. *Cf.* (Brink's Mem. in Supp. at 9–10).

Brink also argues the ALJ failed to consider the required regulatory factors, "such as the board specialization of Dr. Micovic, the length of the treating relationship, and the nature of treatment provided by Dr. Micovic." (Brink's Mem. in Supp. at 11) (citing 20 C.F.R. § 404.1527(c)(2)).[8] Brink again cites no facts that support this assertion, and relies on his previous arguments regarding the ALJ's "improper selective consideration of the evidence." (*Id.*).

"[A]n ALJ's failure to cite specific evidence does not indicate that it was not considered." *England v. Astrue*, 490 F.3d 1017, 1022 (8th Cir. 2007) (internal quotation marks omitted). Further, the regulations require that an ALJ provide good reasons regarding the weight given to a treating source's opinions, but do not require the ALJ to explicitly consider each factor. *See* 20 C.F.R. § 404.1527(c)(2). Here, the ALJ stated that he considered opinion evidence consistent with the required regulations, including 20 C.F.R. § 404.1527. (Admin. R. at 101). As stated above, the ALJ's decision to reject some of the limitations Dr. Micovic provided is supported by the record. The ALJ's failure to explicitly discuss each factor enumerated in section 404.1527(c)(2) does not alter this determination.

---

[8]   In the relevant paragraph, Brink cites 20 C.F.R. § 404.1527(d)(2), which addresses medical source opinions on issues reserved to the Commissioners. The Court assumes that Brink intended to cite 20 C.F.R. § 404.1527(c)(2)—as he did elsewhere on the same page—which addresses the medical opinions of treating sources.

Based on the foregoing, the Court concludes that the ALJ's decision to reject some of Dr. Micovic's restrictions is supported by substantial evidence in the record.

### 2. Brink's Credibility

The ALJ found that Brink's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible." (Admin. R. at 102). The ALJ analyzed the objective medical evidence, the opinion evidence, Brink's statements, and the third-party statements. *See* (*id.* at 102–06). Brink argues that the evidence supports his statements and that "[t]he ALJ failed to apply, or even discuss, the regulatory credibility factors in [Brink's] favor, such as the extent of his treatment." (Brink's Mem. in Supp. at 14).

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), identifies the factors governing a credibility determination. In assessing subjective complaints of pain, an ALJ must consider several factors including: "(1) the claimant's daily activities; (2) the duration, frequency and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." *Brown v. Chater*, 87 F.3d 963, 965 (8th Cir. 1996) (citing *Polaski*, 739 F.2d at 1322); *see also* 20 C.F.R. § 404.1529(c) (discussing how intensity and persistence of symptoms are evaluated and referring to factors that mirror the *Polaski* factors). Other relevant factors are the claimant's work history and objective medical evidence. *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999). The ALJ cannot rely only on the lack of objective medical evidence fully supporting subjective complaints of pain in making the credibility determination. *Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir. 2002). An ALJ finding a claimant not credible must provide reasons for discrediting the claimant and document the inconsistencies uncovered. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005).

Brink again appears to be asking this Court to reweigh the evidence by pointing to evidence that supports his position. *See* (Brink's Mem. in Supp. at 13–14). The Court finds that substantial evidence supports the ALJ's decision regarding Brink's credibility and it therefore cannot reverse the ALJ's decision. *See Harwood*, 186 F.3d at 1042.

Although not labeled as such, the ALJ clearly considered several factors that *Polaski* requires him to consider. The ALJ considered Brink's daily activities based on Brink's Function Report, Brink's testimony, and the letter his wife wrote, and noted Brink's descriptions of pain both based on Brink's testimony and the information from Brink's providers. (Admin. R. 102–04). The ALJ noted that the medical records show that "treatment has significantly relieved [Brink's] pain complaints" and that Brink "functions well on the analgesic regimen, and he has denied any significant side effects from the regimen." (Admin. R. at 104); *see* (*id.* at 497–98, 501) (Dr. Micovic's statements in his January 2015 Data Sheet that treatment significantly relieved Brink's pain and cited by the ALJ); (*id.* at 515) (Dr. Micovic's January 2015 record that Brink does not have side effects and "is able to function well on the analgesic regimen"); (*id.* at 509) (nurse practitioner's March 2015 record that Brink does not have side effects from the analgesic regiment and functions well on the regimen). Notably, Brink again complains that the ALJ relied too heavily on records from October 2015, shortly before the hearing. (Brink's Mem. in Supp. at 13). But as shown above, in January 2015, Dr. Micovic noted three separate times— in the Data Sheet to which Brink argues the ALJ did not give sufficient weight—that Brink's symptoms were relieved by treatment. (Admin. R. at 498–98, 501).

The ALJ considered the functional restrictions that Brink's providers recommended as well as the restrictions the State agency consultants provided. (*Id.* at 103–06). The ALJ also considered objective medical evidence. (*Id.* at 102–04). Thus, the only *Polaski* factor that the

Court can identify that the ALJ did not expressly consider is any precipitating or aggravating factors. *See Brown*, 87 F.3d at 965. But Brink does not argue—and the Court cannot discern from the record—that analysis of precipitating or aggravating factors would materially change the ALJ's opinion. Where "[a]n arguable deficiency in opinion-writing technique" would not change the outcome, there is no reason to set aside the ALJ's decision. *Id.* at 966 (internal quotation marks omitted).

The ALJ did not conclude that Brink is not in pain; instead, he concluded that his pain is not so debilitating that he is completely prevented from working. The Court concludes that the ALJ's determination that Brink was not entirely credible is supported by substantial evidence in the record as a whole.

### 3. The RFC

Brink argues the ALJ erred in rejecting McGilvrey's restrictions that Brink could not squat, kneel, stoop, or bend.[9] (Brink's Mem. in Supp. at 16) (citing Admin. R. at 446–47).

"The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (internal quotation marks omitted). Here, the ALJ noted that despite McGilvrey's June 2014 opinion that Brink could not squat, kneel, stoop, or bend forward, medical records the following month demonstrated that Brink had 5/5 strength in all categories of the motor exam, and had normal range of motion on his musculoskeletal exam. (Admin. R. at 105); (*id.* at 441–42). The ALJ noted that Brink's straight leg test was positive—which indicates nerve

---

[9] Brink also argues the ALJ erred in determining Brink's RFC because the ALJ rejected some of the restrictions Dr. Micovic recommended. (Brink's Mem. in Supp. at 16). The Court has already discussed and rejected this argument above, and therefore, does not repeat its analysis here.

compression or impingement—but surgery improved it. (*Id.* at 105); *see also* (*id.* at 441) (July 2014 record noting positive straight leg test); (*id.* at 467) (operative note for September 2014 surgery); (*id.* at 485) (Dr. Micovic's January 2015 record noting that Brink returned for follow up regarding "cervical pain, headache, leg pain and lower back pain" and noting that "[b]ack and right leg pain is better since the surgery").

In support of his claim, Brink argues his September 2014 surgery "by its very nature" further restricted his "ability to bend, stoop, and perform other postural activities." (Brink's Mem. in Supp. at 16) (citing Admin. R. at 467–70). Brink's argument again asks the Court to review the same information the ALJ reviewed, and come to a different conclusion. Even assuming Brink's argument is correct, the source Brink cites for his authority states that "most spinal fusions involve only small segments of the spine and do not limit motion very much." Spinal Fusion, *OrthroInfo*, Am. Acad. of Orthopaedic Surgeons, https://orthoinfo.aaos.org/en/treatment/spinal-fusion (last updated June 2010). Thus, the fact that Brink had a spinal fusion does not necessarily mean that he was unable to squat, kneel, stoop, or bend. The ALJ's determination is supported by substantial evidence on the record as a whole: McGilvrey's opinion is inconsistent with findings only a month later that Brink had full range of motion. (Admin. R. at 441–42). Brink's symptoms improved after the September 2014 surgery, worsened again, and improved again more significantly after the September 2015 surgery. (*Id.* at 485, 523, 528–29). The ALJ's decision to reject some of McGilvrey's recommended restrictions is supported by substantial evidence in the record as a whole.[10]

---

[10] Because the Court makes this finding, it need does not address the Commissioner's argument that any error in rejecting these restrictions was harmless because Brink is not required to undertake those actions for most of the jobs the vocational expert found Brink could perform. *See* (Comm'r's Mem. in Supp. of Mot. for Summ. J.) [Doc. No. 17 at 18].

In conclusion, none of Brink's arguments warrant reversal of the ALJ's decision; the Court finds that the ALJ's decision to deny Brink benefits is supported by substantial evidence on the record as a whole.

### III. CONCLUSION

Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff James Brink's Motion for Summary Judgment [Doc. No. 14] is **DENIED**;

2. The Acting Commissioner of Social Security's Motion for Summary Judgment [Doc. No. 16] is **GRANTED**; and

3. This case is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: March 9, 2018

*s/Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge
